Wilson, Paul D., J.
In this personal injury lawsuit, Plaintiff has sued Defendant BJ’s Wholesale Club, Inc., for negligence, and for violating M.G.L.c. 176D (and therefore per se violating M.G.L.c. 93A). BJ’s has moved for judgment on the pleadings as to the claim under Chapters 176D and 93A, arguing that it can have no Chapter 176D liability because it is not engaged in the business of insurance as defined in M.G.L.c. 176D, §1. BJ’s is correct, and I will allow its motion.
Background
In the Complaint, Plaintiff alleges that she slipped and fell on debris on the floor of premises occupied by BJ’s in Danvers. In Count I, Plaintiff sues BJ’s for negligence.
At issue in this motion is Count II, where Plaintiff brings a claim for violation of Chapter 176D. Plaintiff makes several allegations about how BJ’s handles personal injury claims brought against it, including hers. She alleges that BJ’s hires or contracts with claims handling representatives to evaluate and recommend for payment all claims made against it. Complaint ¶26. Plaintiff further alleges that BJ’s either has or has contracted with a fully staffed claims department that evaluates risks, and where applicable pays claims such as hers. Id., ¶24. Finally, Plaintiff alleges that BJ’s carries liability insurance with a large aggregate annual deductible that “kicks in” only when the annual amount paid for personal injury claims by BJ’s exceeds the deductible. Id., ¶¶22, 25. In other words, Plaintiff alleges that BJ’s acts like an insurance company with regard to personal injury claims against it, at least until it reaches the annual deductible in its insurance policy.
Plaintiff further alleges that she made a timely written claim against BJ’s, which refused to make a settlement offer. Id., ¶28. She then sent a Chapter 93A letter, to which BJ’s again failed to respond. Id., ¶29. *528 By failing to extend a reasonable offer of settlement when liability was reasonably clear, BJ’s violated Chapter 176D, and thereby committed a per se violation of Chapter 93A, according to Plaintiff. Id., ¶30.
Notably, Plaintiff does not allege that BJ’s is “engaged in the business of insurance.”
Analysis
Among the “unfair claim settlement practices” banned by M.G.L.c. 176D, §3(9) is “failing to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.” Id., §3(9)(f). Therefore, if BJ’s is subject to Chapter 176D, Plaintiff has stated a claim against it in Count II.
The legislature enacted Chapter 176D to “encourage settlement of insurance claims .. . and to discourage insurers from forcing claimants into unnecessary litigation to obtain relief.” Morrison v. Toys “R” Us, Inc., 441 Mass. 451, 454 (2004). This goal is met when “insurers” are punished for unreasonably withholding settlement of “insurance claims.” However, BJ’s is not an insurance company, and the demand the Plaintiff made on BJ’s was not an insurance claim.
M.G.L.c. 176D, §1 sets out the entities subject to Chapter 176D. Those entities include “any other legal entity . . . which is engaged in the business of insurance . ..” Plaintiff claims that because BJ’s either has or contracts with a fully staffed claims department that evaluates risks and pays claims, BJ’s qualifies as an entity “which is engaged in the business of insurance.”
The Supreme Judicial Court said otherwise in Morrison, where it held that Toys “R” Us, a retail giant similar to BJ’s in many respects—including how it handled personal injuiy claims that fell within its deductible—-was not engaged in the business of insurance. “The fact that [Toys ”R" Us] itself employees claims adjusters to administer and negotiate certain claims only against itself does not make it a member of the insurance industry." Morrison, 441 Mass. at 456. The “business of insurance,” the court noted, “involves ‘profit driven business decisions about premiums, commissions, marketing, reserves and settlement policies and practices.’ ” Id. at 455, quoting Poznick v. Massachusetts Med. Professional Ins. Ass’n, 417 Mass. 48, 51 (1994). Neither Toys “R” Us in Morrison, nor BJ’s in this case, charges premiums, pays commissions, or markets insurance products, for profit or otherwise, as insurance companies do.
Plaintiff here responds that the Morrison plaintiff conceded that Toys “R” Us was not in the business of insurance, see Morrison, 441 Mass. at 453, and that fact distinguishes Morrison from this case. It does not. The Morrison plaintiff argued thatToys “R” Us, like any commercial actor, was banned from committing unfair or deceptive acts or practices, and, as a result of that prohibition, Toys “R” Us had to live up to the standards of Chapter 176D whether or not it was in the “business of insurance.” As a result of that argument, the entire focus of the Supreme Judicial Court’s analysis in Morrison was on whether a retail company with a large, self-insured and self-administered deductible was subject to the requirements of Chapter 176D—the very question raised about BJ’s in this case.
As a retailer, BJ’s is subject to Chapter 93A—but only when it is engaged in its commercial activity of selling goods, not when it is engaged in litigation. Id. at 457. As the Supreme Judicial Court said in Morrison, “Because [Toys ”R" Us] is not an insuring entity subject to the standards imposed by M.G.L.c. 176D, §3(9), it cannot, as a matter of law, be held liable under M.G.L.c. 93A for bad faith settlement practices. As an ordinary defendant, [Toys “R” Us] had no affirmative duty to settle the plaintiffs claim." Id. at 458. The same is true of BJ’s in this case.
Conclusion
For the foregoing reasons, the Motion by BJ’s Wholesale Club, Inc. for Judgment on the Pleadings on Count II is ALLOWED.